IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Number: 3:18CR18-MHL |
| ) | Hon. M. Hannah Lauck |
| MOHAMED ABDELLAHI HORMA, ) | |
| Defendant. ) | |
| ) | |
| ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE**

COMES NOW the Defendant, Mohamed Abdellahi Horma, by and through his counsel Robert Wagner and Joseph Camden, and hereby presents this reply to the government's response, ECF No. 22, to his Motion to Dismiss Counts One Through Four of the Indictment, ECF No. 14.

**I.  Section 921(a)(20) Should be Construed to Include Transporting Unstamped Cigarettes.**

Mr. Horma argued that the Maryland crime of transportation of unstamped cigarettes fell within the statutory exception to felonies, set out in 18 U.S.C. § 921(a)(20)(A). ECF 14 at 5. That section exempts from the firearms ban "any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices[.]"

The government urges the Court to interpret § 921(a)(20) narrowly, giving superseding effect to the phrase "similar offenses." ECF No. 22 at 6-7. The government urges the Court to follow the reasoning of *United States v. Stanko,* 491 F.3d 408 (8th Cir. 2007) which, according

1

to the government, "limited the breadth of the residual clause to the three, 'specifically enumerated' offenses[.]" ECF No. 22 at 6. This reasoning is inconsistent with established canons of statutory construction, and the purpose of the statute. It leaves no work for the residual clause, and imputes a nonsensical policy decision to Congress: that there is some relationship between whether an offense has a effect-on-competition element and propensity for violence.

The purpose of a statute is a prime consideration when construing its meaning. "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 112 S. Ct. 2374, 2382 (1992) (quotations omitted). The federal prohibition on possession by those under indictment for, or who have been convicted of, a crime punishable by imprisonment of at least one year, is of recent vintage, enacted in 1961. Pub. L. 87-342 (1961). The current law was enacted as part of the Gun Control Act of 1968. *See* Pub. L. 90-618. As the Supreme Court has noted, in enacting this legislation, "Congress sought to rule broadly to keep guns out of the hands of those *who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society*.'" *Scarborough v. United States*, 431 U.S. 563, 572 (1977) (quoting 114 Cong. Rec. 14773 (1968))(emphasis added).

The government's proposed construction of § 921(a)(20) is not even rationally related to the purpose of the statute. That is, there is nothing about that subset of business-related crimes, that have an effect on economic competition as an element, that relates in any rational way to the potential for violence. The government proffers no reason why Congress would choose to exclude from the ban on firearm possession only those whose convictions contained an effect-on-competition element, but not others of an equally nonviolent and business-related nature.

2

The traditional canons of statutory construction confirm that the defense's reading of the statute is correct. Mr. Horma pointed out that the construction adopted in *Stanko*, and now advocated by the government, gives no meaning to the phrase "relating to the regulation of business practices." Mot. at 11. The government acknowledges the argument, ECF 22 at 7, but, relying on *Stanko*, insists that the phrase "relating to the regulation of business practices" paradoxically somehow 'serve[s] as a summation of Congress' intent to *not* broadly exclude all business-related offenses and to instead further limit 'other similar offenses' by explicitly tying it to the specific categories enumerated in the statute[.]" ECF 22 at 7 (citing *Stanko*, 491 F.3d at 414). This makes little sense. By creating a residual category that includes "other similar offenses relating to the regulation of business practices," Congress must have meant to include more than the enumerated offenses. The interpretation that the government urges would change not a whit if the entire phrase "relating to the regulation of business practices" were absent. Therefore it violates the rule that each provision of the statute must be given effect.

In other contexts, where specific examples are enumerated followed by a general or residual clause, the Supreme Court has read the statute broadly, in accord with its purpose. In *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 216 (2008), the Supreme Court interpreted an exception to a waiver of sovereign immunity that applied to 'any officer of customs or excise or any other law enforcement officer." The Supreme Court held that the final clause controlled and the exception applied to all law enforcement officers. *Id*. It noted that by specifying customs officers, ". . . Congress may have simply intended to remove any doubt that officers of customs or excise were included in 'law enforcement officer[s].'" *Id*. at 226 (brackets in original). The Supreme Court asserted that "we do not woodenly apply limiting principles every time Congress

3

includes a specific example along with a general phrase." *Id*. at 227 (citing *Harrison v. PPG Indus.*, 446 U.S. 578, 589, n.6 (1980)).

As both the Supreme Court and the government have argued and held regarding other statutes, the phrase "relating to" is to be broadly construed.

> For purposes of the present case, the key phrase, obviously, is "relating to." The ordinary meaning of these words is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose. We have repeatedly recognized that in addressing the similarly worded pre-emption provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a), which pre-empts all state laws "insofar as they ... relate to any employee benefit plan." We have said, for example, that the "breadth of [that provision's] pre-emptive reach is apparent from [its] language," *Shaw*, supra, 463 U.S., at 96, 103 S.Ct., at 2899–2900; that it has a "broad scope," *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–2389, 85 L.Ed.2d 728 (1985), and an "expansive sweep," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–1553, 95 L.Ed.2d 39 (1987); and that it is "broadly worded," *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990), "deliberately expansive," *Pilot Life*, supra, 481 U.S., at 46, 107 S.Ct., at 1552, and "conspicuous for its breadth," *Holliday*, supra, 498 U.S., at 58, 111 S.Ct., at 407. True to our word, we have held that a state law "relates to" an employee benefit plan, and is pre-empted by ERISA, "if it has a connection with, or reference to, such a plan." *Shaw*, supra, 463 U.S., at 97, 103 S.Ct., at 2900. Since the relevant language of the ADA is identical, we think it appropriate to adopt the same standard here: State enforcement actions having a connection with or reference to airline "rates, routes, or services" are pre-empted under 49 U.S.C.App. § 1305(a)(1).

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84, 112 S. Ct. 2031, 2037, 119 L. Ed. 2d 157 (1992). Likewise, since "the relevant language of" the § 921(a)(20) exception "is identical," it is "appropriate to adopt the same standard here:" the exception is "deliberately expansive," "broadly worded," and "conspicuous for its breadth," all of which is "apparent from its language." *Id*.

4

The government's position on the phrase "relating to" has been inconsistent with its position in other cases. Here, the government advocates an element-only inquiry limited to the enumerated crimes in the statute. ECF 22 at 6-7. But where the phrase "relating to" appears in other criminal provisions, the government has argued the exact opposite:

> First, the Government contends that this court need not apply the categorical approach because the language of § 2252A(b)(2) "clearly permits a broader inquiry ... into whether a prior offense 'relates to' sexual abuse of a minor." Appellant's Br. at 13 (quoting *United States v. Mills*, 224 Fed.Appx. 232, 234–35 (4th Cir.2007); see also *United States v. McCutchen*, 419 F.3d 1122, 1126–27 (10th Cir.2005)) (noting that "*Taylor* did not impose the categorical approach as a universal requirement of all sentencing enhancements" and concluding that the phrase "relating to" "indicates [Congress's] intent to allow a sentencing court to look beyond the mere elements of a prior state conviction in determining whether such conviction is sufficient to trigger application" of the identical sentencing enhancement in 18 U.S.C. § 2252(b)(2)). According to the Government, then, we can look beyond the elements of North Carolina's indecent liberties statute to Gilbert's underlying conduct to assess whether the sentencing enhancement applies.

*United States v. Gilbert*, 425 F. App'x 212, 215 (4th Cir. 2011).

Congress did not idly include the phrase "relating to the regulation of business practices" in § 921(a)(20). The government's proposed interpretation, and that adopted in *Stanko et sequentii* are silent as to what effect they would give it. The only interpretation consistent with the purpose of the statute and the ordinary rules of statutory construction is that "relating to the regulation of business practices" explains *in what way* Congress believed the enumerated offenses were "similar."

II.     **Section 921(a)(20) is Void for Vagueness**

Mr. Horma pointed to similarities between § 921(a)(20)(A) and the residual clause of the Armed Career Criminal Act, and argued that like ACCA, § 921(a)(20) was void for vagueness. ECF 14 at 13-15. In response, the government argues that the § 921(a)(20) exception is not void

5

for vagueness. ECF No. 22 at 9-11. But the government relies on the reasoning of *Schultz*, *Stanko*, and *Coleman* – all of which were decided before *United States v. Johnson*.[1] The government does not address the contention, ECF 14 at 14-15, that the reasoning of *Johnson* applies to § 921(a)(20).

The courts in *Schultz*, *Stanko*, and *Coleman* (without the benefit of the *Johnson* framework) did not examine whether these sources of indeterminacy exist in § 921(a)(20). In *Stanko*, the majority rejected the void-for-vagueness argument in a single sentence in a footnote. *United States v. Stanko*, 491 F.3d 408, 414 n.5 (8th Cir. 2007) ("We also reject Stanko's argument that the exclusion is unconstitutionally vague.") (citing *United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir.2007) ("The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement.")). The court in *Schultz* relied on its narrowed definition to find the statute sufficiently definite, without discussing the impact of the methodology used to classify the offenses. *Schultz*, 586 F.3d at 531.

The court in *Coleman* relied on the categorical approach to hold that the statute was sufficiently definite. *Coleman*, 609 F.3d at 708 ("[T]he elements test used to determine whether an offense falls within the business practices exclusion is specific and overall gives fair warning as to which offense meet the definition of a 'crime punishable by imprisonment for a term exceeding one year' and which are excluded pursuant to the exception in § 921(a)(20)(A).").

---

[1] The Supreme Court three days ago issued an opinion applying the reasoning of *Johnson* to 18 U.S.C. § 16(b). *See Sessions v. Dimaya*, ___ U.S. ___, 2018 WL 1800371, *7-8 (Apr. 17, 2018).

But the Supreme Court noted in *Sessions v. Dimaya*, ___ U.S. ___, 2018 WL 1800371, *7-8 (Apr. 17, 2018), that the categorical approach actually contributes to the vagueness problems of a statute that encompasses a class of statutes. It rejected the dissent's approach: clarifying the statute by abandoning the categorical approach. *Dimaya*, 2018 WL 1800371 at *11. The reasoning of *Johnson*, affirmed in *Dimaya*, is incompatible with the analysis in *Stanko*, *Schultz*, and *Coleman*.

Judge Bright's dissent in *Stanko*, *see* ECF 14 at 15, is even more prescient in light of *Dimaya*. As Justice Gorsuch wrote in his concurrence, "Vague laws invite arbitrary power." *Dimaya*, 2018 WL 1800371 at *16 (Gorsuch, J. concurring). Justice Gorsuch pointed out that the vagueness doctrine has roots in both due process notice, and also separation of powers principles. *Id*. at *20. As he noted, "legislators may not 'abdicate their responsibilities for setting the standards of the criminal law,' *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974), by leaving to judges the power to decide 'the various crimes includable in [a] vague phrase,' *Jordan v. De George*, 341 U.S. 223, 242, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (Jackson, J., dissenting)." *Id*. As Judge Bright pointed out, Congress delegated the designation of crimes in § 921(a)(20)'s residual clause to the Secretary for eighteen years with no result, and it has fared no better in the hands of the courts. *Stanko*, 491 F.3d at 419 (Bright, J. dissenting).

Mr. Horma argued that, even if construed narrowly, the mismatch between enumerated offenses of § 921(a)(20) and the residual clause deprive ordinary people of the notice that due process requires. ECF 14 at 15. That argument has not been refuted.

7

**III.    922(n) is Unconstitutional**

The government concedes that § 922(n) "does place some burden on the Second Amendment right because it could prevent a person from acquiring a weapon for the purpose of defending themselves." ECF 22 at 14.  However, the government argues that the limited scope of § 922(n) – that it applies for a limited time, and bans only receipt, not possession – justifies intermediate scrutiny, as opposed to strict scrutiny.  ECF 22 at 14.

### A.    Strict Scrutiny Should Apply

The government points out that § 922(n) is a ban on receipt, not possession.  It follows that there is no infringement on the continuous preexisting exercise of Second Amendment rights; or, as the government puts it, "[n]o one is disarmed by the statute[.]"  ECF 22 at 14. There are two replies.  First, both *Heller* and *McDonald*, the two landmark Second Amendment cases decided by the Supreme Court, involved preemptive bans like § 922(n).  *See D.C. v. Heller*, 554 U.S. 570, 575 (2008) (describing D.C. gun ban, recounting that petitioner "applied for a registration certificate for a handgun that he wished to keep at home, but the District refused."); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750, 130 S. Ct. 3020, 3026, 177 L. Ed. 2d 894 (2010) (describing Chicago law, noting that petitioners "are Chicago residents who would like to keep handguns in their homes for self-defense but are prohibited from doing so by Chicago's firearms laws.").  No one was disarmed by either the DC or Chicago handgun bans in the way the government uses the word "disarmed."

Second, § 922(n) should be evaluated under strict scrutiny because it leaves no alternative avenue for the exercise of Second Amendment rights.  It is not, in other words, akin to a time, place or manner restriction in the First Amendment context. *See United States v. Chester,* 628 F.3d 673, 682 (4th Cir. 2010) (analogizing Second Amendment restrictions with First

8

Amendment time place or manner restrictions). It is not a statute covering only certain types of firearms, and leaving the core right of handgun possession in the home intact. *Cf. Kolbe* v. *Hogan*, 849 F.3d 114, 138 (4th Cir. 2017) (en banc) (military assault weapon ban does not burden core right of handgun possession for self defense in home). While an indictment is pending, the indictee is completely and categorically prohibited from exercising a fundamental constitutional right. No one is born with a gun in hand. Everyone who exercises their Second Amendment right to keep and bear arms must necessarily have acquired the firearm at some point. Thus, the government's argument that a ban on the act necessary to begin exercising a fundamental right "only minimally burdens a relatively small group of citizens[,]" ECF 22 at 15, seriously understates the intrusion on a fundamental constitutional right. Strict scrutiny must apply.

Although it is true, as the government points out, that § 922(n) is temporally limited as well, ECF 22 at 14, this does not actually mitigate the intrusion on the Second Amendment. The government tips its hand by asserting that "[a] person under felony indictment has not *yet* been adjudged guilty[.]" ECF 22 at 15 (emphasis added). Some who are indicted are, in fact, acquitted, and sometimes charges are dismissed. And while an indictment is pending, all defendants are presumed innocent. While a temporary deprivation of certain other fundamental rights has been approved due to an individual's indictment alone, those deprivations are always accompanied by an individualized determination at a prompt hearing. For example. an arrest on an indictment requires that the person be brought before a magistrate "without unnecessary delay." Fed. R. Crim. P. 5. And detention must be determined at the initial appearance, unless serious aggravating factors are present, in which case the hearing can be at most three days later. *See* 18 U.S.C. § 3142. And further restrictions on, for example, the right to travel or to associate

9

with others can be abrogated only upon an individualized determination that the condition is the "least restrictive means" to further weighty government interests in public safety and the trial process. *Id*. Thus, Congress has chosen a means – prompt individualized determinations – that balances the government's interest in public safety on the one hand with the individual's fundamental rights and the presumption of innocence on the other. Section 922(n) is unconstitutional precisely because it is a blanket, not individualized ban, and precisely because it does not allow procedures to permit the exercise of Second Amendment rights under appropriate conditions.

Furthermore, although Mr. Horma discussed *Laurent* and other cases upholding § 922(n), he also pointed to cases invalidating blanket bans due to pending unadjudicated charges. Mot. at 19 (discussing *United States v. Arzberger*, 592 F. Supp. 2d 590 (S.D.N.Y. 2008) (invalidating Adam Walsh Act ban on firearms possession while charges pending)). The government, for its part, relied on *Laurent* but declined to distinguish or even mention *Arzberger*

### B. In the Alternative, the Government's Intermediate Scrutiny Analysis is Flawed.

If the Court does determine that intermediate scrutiny applies, it should still hold that § 922(n) is unconstitutional. As the government notes, intermediate scrutiny asks whether the law "is reasonably adapted to a substantial governmental interest." ECF 22 at 12 (quoting *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017) (en banc). The defense agrees, of course, that public safety – namely the prevention of the aggressive use of firearms – is a substantial governmental interest. But the means chosen does not fit that objective with the balancing respect for individual rights that even intermediate scrutiny requires.

A few points regarding intermediate scrutiny, which the government overlooked, bear mentioning. The government "bears the burden of justifying its regulation in the context of heightened scrutiny review[.]" *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). And although it is not a rigorous as strict scrutiny, the degree of deference to the legislature is not as strong as under rational basis review. Of intermediate scrutiny in the First Amendment context, the Supreme Court has said

> To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interests. "Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' " Ward, supra, 491 U.S., at 799, 109 S.Ct., at 2758 (quoting United States v. Albertini, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)). Narrow tailoring in this context requires, in other words, that the means chosen do not "burden substantially more speech than is necessary to further the government's legitimate interests."

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662, 114 S. Ct. 2445, 2469, 129 L. Ed. 2d 497 (1994). Thus, in the Second Amendment context, by analogy, the chosen means of preventing gun violence can not "burden substantially more [Second Amendment conduct] than is necessary to further the government's legitimate interests." *Id*. Once, as here, the government's interest is established, "[i]t must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id*. at 664.

Here, a blanket ban is substantially broader than is necessary. The most telling argument on this point comes from Congress itself. When it enacted the Bail Reform Act, it required an individualized determination, and left in the discretion of the magistrate examining the defendant whether to restrict the possession of firearms. 18 U.S.C. § 3142(c)(1)(B)(viii) (allowing

11

discretionary condition restricting possession of firearms). This solution properly limits the infringement of a fundamental right to situations when it is necessary and furthers public safety.

**IV.     Mr. Horma Was Not Illegally or Unlawfully Present**

The government agrees that Mr. Horma filed his asylum application while present in the United States on a then-valid visa. ECF 22 at 2. And the government agrees that "the defendant's timely application for asylum allow – and in fact, required – him to remain in the United States." ECF 22 at 17. This is the key fact in this case, and distinguishes asylum from adjustment of status.

First, the cases the government cites speak of an alien "who has acquired unlawful or illegal status." ECF 22 at 16. As Mr. Horma pointed out, however, he is not like the alien in *Al Sabahi* who first overstayed his visa, and then filed a petition after years of illegal presence. Such an action cannot cure his illegal status. However, Mr. Horma pointed out that he had no gap – he filed his asylum application while he was here legally. He did not "acquire unlawful or illegal status" in the first place.

Second, the government relies on cases involving adjustment of status applications; but asylum is different in a key way. An application for an immigrant visa granting permanent resident status may be filed from abroad. *See* 8 U.S.C. § 1202 (issuance of visas); 22 C.F.R. § 42.61 (place of application). Adjustment of status from within the United States is actually barred in many circumstances. 8 U.S.C. § 1255(c). But an asylum application can *only* be filed

from inside the United States, 8 U.S.C. § 1158(a)(1), and as the government admits, an asylum application requires the alien to remain in the United States.[2]

It is difficult to say how the government construes "illegally or unlawfully in the United States" in § 922(g)(5)(A) to include Mr. Horma, where it does not dispute his right to file an asylum application, and agrees that United States law requires him to remain in the United States while it is pending. Whatever the nuances of the meaning of 'illegally or unlawfully," its plain ordinary meaning cannot include situations where an alien's presence is required.

## V.     Conclusion

Counts one through four should be dismissed. Mr. Horma should not be subject to prosecution under § 922(n) because a proper reading of the felony exceptions includes his indictment for Maryland transportation of unstamped cigarettes. And in the alternative, §922(n) is unconstitutional. It fails strict scrutiny, and even fails intermediate scrutiny, if the government is correct that it applies.

Likewise the counts for possession of a firearm while illegally or unlawfully present should be dismissed. The parties agree that Mr. Horma had filed an asylum application while here legally, and that he was required to remain in the United States while it was pending. It cannot be illegal or unlawful to remain in the United States as required.

---

[2] The United States is also signatory to a Treaty which forbids expulsion of refugees. See 1951 U.N. Convention on the Rights of Refugees, Art. 32 ("The Contracting States shall not expel a refugee lawfully in their territory save on grounds of national security or public order.") (http://www.unhcr.org/en-us/3b66c2aa10).

Respectfully Submitted,
Mohamed Abdellahi Horma.

By: _____/s/_____
Counsel

Joseph S. Camden
Va. Bar No. 92143
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0830
Fax (804) 648-5033
joseph_camden@fd.org


Robert J. Wagner
Va. Bar No. 27493
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0808
Fax (804) 648-5033
Robert_wagner@fd.org

**CERTIFICATE OF SERVICE**

       I hereby certify that on April 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

Angela Mastandrea-Miller
US Attorney Office (Richmond)
SunTrust Building
919 East Main Street
Suite 1900
Richmond, VA 23219

                                                   /s/
                                      Joseph S. Camden
                                      Va. Bar No. 92143
                                      Assistant Federal Public Defender
                                      Office of the Federal Public Defender
                                      701 E. Broad St., Ste. 3600
                                      Richmond, VA 23219
                                      (804) 565-0830
                                      Fax (804) 648-5033
                                      joseph_camden@fd.org