```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                          Richmond Division


UNITED STATES OF AMERICA      }
                              }
v.                            }    Criminal Case No.:
                              }    3:18 CR 18
MOHAMED ABDELLAHI MOHAMED     }
HORMA                         }

                                   May 24, 2018


        COMPLETE TRANSCRIPT OF STATUS CONFERENCE
         BEFORE THE HONORABLE M. HANNAH LAUCK
           UNITED STATES DISTRICT COURT JUDGE



APPEARANCES:

Angela Mastandrea-Miller, Esquire
OFFICE OF THE UNITED STATES ATTORNEY
919 East Main Street
Suite 1900
Richmond, Virginia  23219

     Counsel on behalf of the United States


Joseph S. Camden, Esquire
OFFICE OF THE FEDERAL PUBLIC DEFENDER
701 East Broad Street
Suite 3600
Richmond, Virginia  23219

     Counsel on behalf of the Defendant




               KRISTA L. HARDING, RMR
                OFFICIAL COURT REPORTER
              UNITED STATES DISTRICT COURT
```

```
 1              (The proceeding commenced at 10:32 a.m.)
 2              THE CLERK:  3:18 CR 18.  *United States of
 3   America v. Mohamed Abdellahi Mohamed Horma.*
 4              The United States is represented by Angela
 5   Mastandrea-Miller.
 6              The defendant is represented by Joseph Camden.
 7              Are counsel ready to proceed?
 8              MS. MASTANDREA-MILLER:  The United States is
 9   ready, Your Honor.
10              MR. CAMDEN:  The defense is ready.
11              THE COURT:  All right.  Well, I have scheduled
12   this hearing, and let me first put on the record that we
13   do not have an interpreter with us during this hearing and
14   so we're going to have to arrange that a record be made of
15   the hearing so that it can be read and interpreted for
16   Mr. Horma afterwards.  Since this is just a scheduling
17   matter, I wanted to be sure that we got together rather
18   than having this discussion through a series of electronic
19   communications with the Clerk's Office and counsel.
20              So we have had some difficulty obtaining an
21   interpreter for the dates that we had scheduled to hear
22   the motion to dismiss, and because of that I wanted to
23   bring the parties in.  We had electronically proposed a
24   date in June that -- I think we initially proposed
25   June 6th.  That was not available for counsel for the
```

1  United States, and then we proposed June 19th, and I think
2  that was not available for counsel for Mr. Horma.
3           And then we received an electronic communication
4  suggesting that the case be heard the first week of July,
5  so I want to hear from the parties about that.
6           MR. CAMDEN:  Just to give the Court my full
7  schedule, I have -- our office has already paid for
8  training out of town for me from June 17th to June 30th,
9  and then I anticipate being out on family leave sometime
10 starting around July 12th.  However, that's going to be
11 flexible, and I will be happy to come in for a half day
12 anytime during that leave to argue these motions.  I'll be
13 in town and available.  Other than that, I'm happy to come
14 anytime that the Court is available, and opposing counsel
15 is available.
16          I would also note I do have co-counsel on this
17 case, Mr. Wagner, who helped draft the briefs.  And he
18 would like to also be able to argue some of the issues, I
19 believe the Constitutional issues on 922(n), whereas I
20 would be arguing the immigration-related issues if that is
21 acceptable to the Court.
22          THE COURT:  All right.
23          MR. CAMDEN:  Mr. Wagner's schedule is also a
24 little bit in flux.  I apologize.  I had it right here.
25          THE COURT:  I have an email that suggests that

```
 1  Mr. Wagner is out of the office June 7th through the
 2  15th and June 22nd, does that sound right?
 3             MR. WAGNER:  That's correct, Your Honor.
 4             THE COURT:  All right.
 5             So we can -- first of all, does Mr. Horma --
 6  does he speak any English?
 7             MR. CAMDEN:  Yes, he does.  He speaks
 8  conversational English, Your Honor.  And when I speak with
 9  him, I often do meet with him without an interpreter.  The
10  concern I had for needing an interpreter in court is
11  frequently there are, even when I speak with him, some
12  misunderstandings that have to be slowed down and
13  corrected.  And some of the terms, obviously, that we use
14  are complex legal terms -
15             THE COURT:  Right.
16             MR. CAMDEN:  - so if he's going to be
17  understanding without us pausing every 30 seconds for a
18  check, then I think an interpreter needs to be here.
19             THE COURT:  Well, mostly I'm asking for purposes
20  of this hearing, actually.
21             MR. CAMDEN:  Oh, for this hearing, I think that
22  we're fine, Your Honor.  And I've certainly told him that
23  he can ask me -- if he raises his hand and asks me to
24  explain if he doesn't understand anything that's going on.
25             THE COURT:  Do you mind if I just talk to him
```

about this timing issue?

MR. CAMDEN: No problem, Your Honor.

THE COURT: Mr. Horma, could you please stand.

So I saw you gesture. It sounds like you do understand what we're talking about, just timing, right?

MR. HORMA: Yeah, I understand everything.

THE COURT: Okay. So we're talking about delaying this a little bit so that we can be sure that we have an appropriate interpreter. And we're trying to get our schedules together so that every person can be accommodated as far as making sure that the hearing can be heard. What this means is that this -- again, we've talked a lot about the speedy trial issues. It just means that in the interest of justice, because a motion is pending for all these reasons, your speedy trial rights are essentially just on hold because you have put forward a motion that needs to be considered before we go forward with any kind of actual trial. Do you understand that?

MR. HORMA: Yes, I understand.

THE COURT: And you can -- you've had plenty of time to talk to Mr. Camden about that, right, and Mr. Wagner, about the timing?

MR. HORMA: Yeah. I just hope it's -- you doing it as soon as possible.

THE COURT: All right. Well, your attorney is

talking about delaying this hearing until like the first week of July. Do you understand that that's what we're talking about?

    MR. HORMA: Yeah, I hear. I understand.

    THE COURT: All right. Well, if you have any objections about that, then you should talk to your lawyers about it now. You don't have to talk in front of me, but you can talk to them about if we're -- we're talking about, it looks like, the first week of July is the first time we could have this hearing. Do you understand that?

    MR. HORMA: Yeah, I understand.

    THE COURT: All right. Are you objecting to that?

    MR. HORMA: No.

    THE COURT: All right. Okay.

    So you-all can have a seat.

    So it seemed to me that based on the electronic communication, the week that was available would be the week of July 4th.

    Ms. Miller, are you available then?

    MS. MASTANDREA-MILLER: I'm available most of that week. I'm not going to be, obviously, available every day that week, but I'll work around it. And I think that the -- I have an agent who's going to testify who has

```
 1   indicated that he would be available that day as well --
 2   or that week.  That week.
 3              THE COURT:  Right.
 4              MS. MASTANDREA-MILLER:  Was there a day of that
 5   week, Your Honor, that you are considering?
 6              THE COURT:  I was considering the 3rd or the
 7   5th.
 8              MS. MASTANDREA-MILLER:  The 3rd would better for
 9   the United States if that's possible, Your Honor.  I don't
10   know if there is an interpreter available though.
11              THE COURT:  Well, we don't know.  That's the
12   issue.
13              MS. MASTANDREA-MILLER:  I see.
14              THE COURT:  We have to call the interpreter.  So
15   I would like to try to pick either the 3rd or the 5th.
16   Maybe keep them both open to make sure that we can try to
17   get an interpreter available.
18              MS. MASTANDREA-MILLER:  I was going to take some
19   vacation time, Your Honor, but if it's going to be the
20   3rd or the 5th, then I'll just have to change my plans.  I
21   mean, it's been a moving target.  You know, I had planned
22   to take some vacation in June and I cancelled that, and
23   then July and, you know, I'm moving that so hopefully, you
24   know, I'll be able to --
25              THE COURT:  Well, I'm asking you for -- I mean,
```

```
 1  obviously, all of these personal -- everybody is taking
 2  vacations.
 3              MS. MASTANDREA-MILLER:  I'm not.  I'm not taking
 4  any vacation, but I had some plans to take a vacation.
 5              THE COURT:  No, I'm saying -- that's not a
 6  remonstration.  I am moving other things because of other
 7  people's vacations.  I'm trying to accommodate you all.
 8              MS. MASTANDREA-MILLER:  I appreciate that.  If
 9  we could do it the following week, Your Honor, the week of
10  July 9th.  I don't know if that's available for the Court.
11  That would actually work better for the United States, but
12  if that's not available then we'll make July 3rd or
13  5th work.
14              Your Honor, I don't want to interrupt the Court,
15  but I don't know if it's possible to do this on
16  June 4th or 5th as opposed to the 6th.
17              MR. CAMDEN:  July?
18              MS. MASTANDREA-MILLER:  June 4th or 5th, were
19  any of those days available for the Court?  That would be
20  the week after next.
21              THE COURT:  That's not available.
22              MS. MASTANDREA-MILLER:  Okay.  Thank you.
23              THE COURT:  All right.  We could make ourselves
24  available July 9th.
25              MS. MASTANDREA-MILLER:  Thank you, Your Honor.
```

1  MR. CAMDEN: That's fine for us as well, Your
2  Honor.
3  THE COURT: All right. So we'll schedule it for
4  July 9th, probably in the afternoon, but that's going to
5  depend on the interpreter. I'm going to say to you all if
6  the interpreter is not available -- and when I say "the"
7  interpreter, I mean that advisedly. There is one
8  interpreter that we are able to pull, which is part of our
9  problem. If the interpreter is not available, we're going
10 to have to go with the 3rd or the 5th.
11 MS. MASTANDREA-MILLER: Right.
12 THE COURT: We just can't go after that.
13 MS. MASTANDREA-MILLER: That's fine.
14 THE COURT: So we will try to follow up on that
15 as quickly as we can. And I'm going to tentatively
16 schedule it at 2:00, but because this interpreter travels
17 pretty far, we're going to let that interpreter's schedule
18 drive the timing itself, all right?
19 MS. MASTANDREA-MILLER: All right. Thank you.
20 THE COURT: So, Mr. Horma, do you understand
21 what we've just done?
22 MR. HORMA: Yes.
23 THE COURT: All right. Do you want to tell me?
24 What did we do?
25 MR. HORMA: You schedule the next court on

```
 1  July 9th at 2:00.
 2          THE COURT:  And that's for your hearing.  For
 3  your motion to dismiss, right?
 4          MR. HORMA:  Yes.
 5          THE COURT:  Okay.
 6          So, Mr. Wagner, I think you're not officially on
 7  the record yet.
 8          MR. WAGNER:  I will get myself on, Judge.
 9          THE COURT:  That's right.  Okay.
10          So thank you-all for coming in.  This is much
11  easier to do in this fashion than it would be through
12  electronic communication.  The rule is if you've sent
13  three emails, pick up the phone.  But we can't pick up the
14  phone because we have to do it on the record.  So we'll do
15  it this way.
16          Plus, Mr. Horma hears it this way.  I think it
17  is important when these things go on that your client know
18  why, and so I'm not even inclined to do a telephone
19  conference call in these kinds of things, all right?
20          MS. MASTANDREA-MILLER:  Your Honor, just a quick
21  question for the Court.  In looking at the issues a little
22  bit further, we believe that Mr. Horma doesn't even have
23  standing because of his status of being illegally in the
24  United States.  I would ask the Court for permission to
25  file just a very brief supplement to our response just
```

```
 1  bringing that issue since we have another four or five
 2  weeks before the hearing.  I was hoping that that would be
 3  something that the Court could consider.
 4           We'll file a --
 5           THE COURT:  Really?
 6           MS. MASTANDREA-MILLER:  Yeah.  Really.  We don't
 7  believe he has standing to argue it as an illegal alien,
 8  argue the 922(n).
 9           THE COURT:  Well, what I'm saying really is we
10  just finished rescheduling everything and now you're --
11           MS. MASTANDREA-MILLER:  No, I don't think that
12  will throw anything off.  We would file --
13           THE COURT:  I hear what you're saying,
14  Ms. Miller.
15           MS. MASTANDREA-MILLER:  Okay.
16           THE COURT:  You guys with these motions are
17  making me crazy.  There is nothing going forward in the
18  manner that it should.  Standing is jurisdictional.
19           Mr. Camden filed a motion ignoring a
20  jurisdictional issue in another case a couple months ago,
21  and so I'm getting two rounds of briefing in every single
22  one of these cases.  It's nuts.
23           MS. MASTANDREA-MILLER:  I agree.
24           THE COURT:  Are you looking at jurisdiction?
25           Are you looking at jurisdiction?
```

```
 1                It's a total waste of resources.
 2                MS. MASTANDREA-MILLER:  I agree.
 3                THE COURT:  Total.
 4           So you seek leave to do it, and you know what,
 5   I'm not scheduling any hearing until you guys get your act
 6   together and you know what you're raising and you're not
 7   raising.  So you seek leave in writing –
 8                MS. MASTANDREA-MILLER:  I will.
 9                THE COURT:  – by the close of business today.
10           You respond quickly, and then we'll decide
11   whether or not -- you don't have 14 days.  You have seven
12   days.
13           And you keep in mind that I let you raise a
14   jurisdictional issue in a second round of briefing just
15   months ago that you had not properly raised in a footnote
16   because both parties spent an entire 30 pages of brief
17   arguing the merits of the case when the issue was whether
18   or not I had jurisdiction that I had raised with you.
19                MR. CAMDEN:  Understood, Your Honor.
20                THE COURT:  You come up with a briefing schedule
21   that doesn't have me deciding a Constitutional issue a day
22   before the scheduled hearing on July 9th.
23                MS. MASTANDREA-MILLER:  Of course.
24                THE COURT:  Don't "of course" me, Ms. Miller.
25                MS. MASTANDREA-MILLER:  No.  Of course I'll do
```

```
 1  that.  I'm saying that that's what we'll do.  I agree.  We
 2  will do it.
 3          But he did not raise that -- he did not discuss
 4  that --
 5          THE COURT:  He doesn't raise standing.  You do.
 6          MS. MASTANDREA-MILLER:  No.  I know.  And so
 7  after --
 8          THE COURT:  It's your duty to raise the
 9  jurisdictional issue if he challenges it.  He thinks he
10  has standing because he filed the motions.
11          MS. MASTANDREA-MILLER:  I get that.  I get that.
12  But we now think he doesn't.
13          THE COURT:  Well, you had time to think about
14  that when he filed the motion.  Oops.
15          MS. MASTANDREA-MILLER:  Well, we missed it --
16          THE COURT:  We?
17          MS. MASTANDREA-MILLER:  Right.  We're going to
18  seek -- we'll file a motion to seek leave to do that.
19  I'll talk to Mr. Camden about a schedule, and we'll file
20  something with the Court asking for that after he and I
21  have discussed how soon it will take for him to --
22          THE COURT:  And that will happen by 5:00 today
23  for sure.
24          MS. MASTANDREA-MILLER:  Right.
25          THE COURT:  I look forward to your motion.
```

```
                                                          14
 1              MS. MASTANDREA-MILLER:  Thank you, Your Honor.

 2          (The proceeding concluded at 10:50 a.m.)

 3


 4                       REPORTER'S CERTIFICATE

 5           I, Krista Liscio Harding, OCR, RMR,
    Notary Public in and for the Commonwealth of
 6  Virginia at large, and whose commission expires
    March 31, 2020, Notary Registration Number 149462,
 7  do hereby certify that the pages contained herein
    accurately reflect the notes taken by me, to the
 8  best of my ability, in the above-styled action.
         Given under my hand this 31st day of May, 2018.
 9
                             _____
10                              Krista Liscio Harding, RMR
                                Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```