```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Richmond Division


UNITED STATES OF AMERICA      }
                              }
v.                            }    Criminal Case No.:
                              }    3:18 CR 18
MOHAMED ABDELLAHI MOHAMED     }
HORMA                         }

                                   May 24, 2018


     COMPLETE TRANSCRIPT OF SECOND STATUS CONFERENCE
          BEFORE THE HONORABLE M. HANNAH LAUCK
             UNITED STATES DISTRICT COURT JUDGE



APPEARANCES:

Angela Mastandrea-Miller, Esquire
OFFICE OF THE UNITED STATES ATTORNEY
919 East Main Street
Suite 1900
Richmond, Virginia  23219

     Counsel on behalf of the United States


Joseph S. Camden, Esquire
OFFICE OF THE FEDERAL PUBLIC DEFENDER
701 East Broad Street
Suite 3600
Richmond, Virginia  23219

     Counsel on behalf of the Defendant




                    KRISTA L. HARDING, RMR
                     OFFICIAL COURT REPORTER
                   UNITED STATES DISTRICT COURT
```

```
 1                (The proceeding commenced at 11:22 a.m.)
 2                THE COURT:  All right, I know that we called
 3   court on the reconsideration.  I've decided to be sure
 4   that we meet again in person.  I've asked -- I know that
 5   Mr. Wagner is here as the supervisor from the Federal
 6   Public Defender, and I've asked that a supervisor from the
 7   U.S. Attorney's Office be brought in also so we can
 8   addressed the issue raised at the end of what was a
 9   scheduling hearing.
10                We had rescheduled based on attorney
11   availability, and the Court's availability, the hearing on
12   the motion to dismiss that had been fully briefed for
13   July 9th at 2:00.  I want to be clear that we had a motion
14   to dismiss that was filed.  The United States filed a
15   response to the motion to dismiss, then it filed an
16   amended response to the motion to dismiss, which is ECF
17   Number 22, saying that -- without any motion or notice or
18   explanation that accompanied the amended response.  There
19   was an email communication, not on the Court record,
20   saying that the amended response was filed because the
21   United States noticed a few typographical errors in its
22   response and it sought to correct those errors.
23                And in the email that was sent to counsel and to
24   the term clerk here in my Chambers, the United States
25   indicated that there were no substantive changes to the
```

1  response.  The Federal Public Defender did not lodge any
2  objection to that.
3           The United States also, without filing any
4  motion or otherwise seeking leave of the Court, filed a
5  sur-reply 10 days after Horma filed his reply.  That's ECF
6  Number 25.
7           Local Rule of Criminal Procedure 47 governs
8  motions in criminal cases, and sets forth a deadline by
9  which parties must file a response in reply.  Local
10 Rule 47(F)(1) says, "No further briefs or written
11 communications may be filed without first obtaining leave
12 of Court."
13          And Rule 47(F) was not addressed in the United
14 States' attempt to file its sur-reply, and the Federal
15 Public Defender took no -- didn't lodge any objection to
16 that.
17          After this Court called a hearing so that we
18 could schedule, just schedule, a motion on the -- a
19 motions hearing on the paperwork in front of the Court,
20 the Assistant United States Attorney approached the Bench
21 and said that since we had an extra month now the United
22 States wished to file -- seek leave to file a motion to
23 dismiss or to address that Mr. Horma didn't have standing
24 to challenge this issue, and said, I think it's a pretty
25 direct quote, we don't think he has standing.

1    I then, a little firmly, and probably a little
2 too firmly, and for that I apologize, expressed
3 frustration with the nature of the briefing that has gone
4 on in these criminal motions in this Court.  I referenced
5 another motion in a different case where a jurisdictional
6 issue was not properly raised, and I required additional
7 briefing.
8    I actually just raised that same issue with
9 another representative from the Federal Public Defender as
10 that person was seeking leave for additional time to file
11 a suppression motion about whether or not that person was
12 prepared to address jurisdictional issues in the case.
13 And, clearly, that was a new subject matter to that person
14 and so there may be no jurisdictional matters.  But it was
15 also clear that particular lawyer was not able to address
16 the jurisdictional questions I had, and was not able to
17 say to me that there were none.
18    And so now the United States made an oral motion
19 to address another jurisdictional issue after -- I'm
20 saying this with two supervisors in the room, after I have
21 spoken to both offices about the nature of how and when to
22 raise these motions.  And I could not be more clear that I
23 want to get the law right.  I am not discouraging anybody
24 from filing motions that have merit about how a legal case
25 should come in front of this Court.  I absolutely want to

 1  be sure that we are following the law.  But the notion
 2  that a human being sits in jail while these motions come
 3  in every 30 days with a completely different angle and a
 4  completely different theory is appalling.
 5              Jurisdiction is the number one thing that has to
 6  be addressed in every single case.  And if the attorney
 7  bringing the case from either side cannot tell me that
 8  they know that there is jurisdiction, it is a huge
 9  disservice to the criminal justice system because there's
10  a human being in jail.  So that is my frustration.
11              And I'm going to have the United States -- first
12  of all, I do not appreciate scheduling a hearing based on
13  everybody's schedule, and then at the end someone saying,
14  oh, I have this jurisdictional issue we'd like leave to
15  address.  It doesn't strike me as a particularly
16  straightforward manner in which to approach that type of
17  briefing.
18              It certainly is not the way we normally operate
19  here.  That's not a matter of rules.  It certainly is --
20  well, it becomes a matter of rules because you're seeking
21  leave to file a different motion.  But I'm telling you, I
22  don't understand what's happening between these two
23  offices, and so you-all are going to have to address it to
24  me.
25              These offices are full of excellent lawyers who

1 are capable of issue-spotting from the day the case comes
2 across the threshold. And it has to be everybody on every
3 case. I can't have somebody come in and say they don't
4 know whether or not there's jurisdiction in the case and
5 they may need extra time because they didn't know that
6 jurisdiction might be an issue.
7 So I'm speaking to both sides, but this is the
8 United States' issue. I need to hear from the United
9 States.
10 MS. ABER: Your Honor, the only thing I can do
11 is apologize on behalf of the office. I've heard of some
12 of these issues from the Court, I'm heard some
13 tangentially from management specific to the office, but
14 it is my responsibility that those directives are
15 communicated fully to everyone and not piecemeal, not by
16 email, not be informal conversation.
17 And it is time -- I'm going to convene a meeting
18 and direct every Assistant United States Attorney to
19 attend in the criminal section, and personally convey this
20 information, and require certain levels of review to
21 ensure that these issues, for the next foreseeable time,
22 are personally addressed by management in this office.
23 This office has prided itself on allowing line assistants
24 some level of autonomy within the directives of the
25 Department of Justice, and perhaps at this juncture too

much autonomy has been provided or authorized.

And so I have nothing to do except apologize and assure the Court that these matters will be completely addressed in person with all assistants in the Richmond office.

THE COURT: So let me just say to you. The standing issue, the genie is out of the bottle, and so it has to be addressed. I am going to -- I am not going to look at standing on my own. Now that I have had a representative of the United States say "we" do not think that Mr. Horma has standing, that person has said that on behalf of the United States of America, and it has to be addressed.

If you want to back off of that standing issue you may do so, but I can't ignore the issue. Standing can be raised at any time, and there's no way I'm issuing an opinion that doesn't address an issue that has been raised in front of me.

Now, I am telling you this, this goes against my sense of fairness because the United States now has filed two briefs when it only had a right to file one where it didn't raise the issue of standing. And I'm just going to say on the record I do the best I can in managing my court looking toward judicial fundamental fairness to every human being that comes in front of this Court. And I

had -- the only justification I can find, one, is it's jurisdictional and I've got to address it.

The other issue is I just did this for the Federal Public Defender. They filed a whole brief, and in one footnote put in a jurisdictional question that raised the issue very obliquely. And then rather than saying I'm not going to address it one way or the other, I allowed both parties to address it fully. Jurisdiction is something I just cannot ignore.

But I can tell you I do not know how somebody is not reviewing these briefs with an eye toward jurisdiction sometime before they're fully briefed and we're extending the hearing on it. So you will also speak with Mr. Wagner directly, and you-all will figure out how it is this issue is going to be addressed. And we will have another in court hearing, if we have to, so that we can be sure that we put on the record how this case is going to go forward, including addressing the standing issue.

I have no choice now -- well, I believe it would be completely unfair not to address an issue that gives me the power, or not, to review the case that is now fully briefed in front of me. That this is happening again is a pretty unpleasant experience of deja vu because I know every lawyer in both offices are significantly smart and cares about what they're doing, but this is just -- it's

```
 1  so disappointing, frankly.
 2          Mr. Wagner, do you want to speak to this issue
 3  at all?
 4          MR. WAGNER:  Good morning, Your Honor.
 5          THE COURT:  Good morning.
 6          MR. WAGNER:  I also want to apologize for any
 7  inconvenience that people in my office have caused the
 8  Court, and certainly any problems that they've caused to
 9  keep their clients incarcerated for any additional period
10  of time.
11          One of the things though in this courthouse, and
12  in the Richmond Division of the Eastern District, is I
13  feel that we get along fairly well with the U.S.
14  Attorney's Office and that we have a good relationship.
15  So you mentioned that on some of the occasions when briefs
16  were filed by the U.S. Attorney's Office there was no
17  objection raised by the Public Defender's Office, and
18  frankly I don't know if you want that to change.  If you
19  want us to be more aggressive in objecting to what the
20  U.S. Attorney's Office have done.
21          THE COURT:  Well, I think, Mr. Wagner, you're
22  probably raising this in part because your client is here
23  but also because you know I don't want that to change.  I
24  think that doesn't serve the interest of justice.  So I
25  was saying that in a positive fashion.
```

|   |   |
|---|---|
| 1 | There's no way Mr. Horma could know that that is |
| 2 | in his best interest that what happens is that if the |
| 3 | United States is a day late on something that that can go |
| 4 | through in the interest of justice, as it would for his |
| 5 | lawyers because anything can come up.  Snow storms come |
| 6 | up. |
| 7 |       MR. WAGNER:  Yes, Your Honor. |
| 8 |       THE COURT:  Hurricanes come up.  And this |
| 9 | office -- this District is very good about assuring that |
| 10 | both sides do not object to those matters.  And you are |
| 11 | correct in raising that issue, especially for your |
| 12 | client's benefit, because the criminal justice system |
| 13 | would grind to a halt if either side started nitpicking on |
| 14 | issues that don't go to the merits, and then also mean |
| 15 | that the issue is not fully briefed in a way that best |
| 16 | serves, ultimately, the client, whatever it is, civilly or |
| 17 | criminally. |
| 18 |       MR. WAGNER:  Yes, ma'am. |
| 19 |       THE COURT:  But I take it very seriously in the |
| 20 | criminal context, as I would hope anybody does.  And I |
| 21 | think everybody does here. |
| 22 |       MR. WAGNER:  Very well. And, Your Honor, I must |
| 23 | say that this has been addressed to people in my office. |
| 24 | I know this has been brought up before.  I will convene |
| 25 | all of the attorneys in the Richmond office.  I will speak |

1  to them about being as diligent as possible in raising
2  issues in a timely manner, being prepared on
3  jurisdictional issues, and always acting in the best
4  interest of our clients.
5        THE COURT:  So I'm going to tell you,
6  Mr. Wagner, I don't know if the issue came back to you,
7  but it was in a separate case.  It was another motion to
8  dismiss.
9        MR. WAGNER:  It did, Your Honor.
10       THE COURT:  And I asked jurisdictional
11  questions, and the Federal Public Defender just wasn't
12  sure.  There may be not a jurisdictional issue, which I
13  said in open court, but if the attorney cannot answer the
14  questions it does a tremendous disservice.  And then
15  unfortunately the attorney said can I have additional time
16  to address jurisdictional issues, which of course is
17  disquieting because it has to be the fundamental basis of
18  every brief, right?
19       So I'm glad it did go back to you.
20       MR. WAGNER:  It did, Your Honor.
21       THE COURT:  But I am throwing up my hands about
22  what to do.  I want to get the law right.  I want these
23  lawyers to shine in doing it correctly, but I absolutely
24  do not want this to come forward in -- continue to come
25  forward in the fashion it is.  It is a disservice to

really our really very special place to practice law and the criminal justice system.

    MR. WAGNER: Would you like for us to come back to you, Judge, with more information about how we have addressed this?

    THE COURT: I think you-all are going to have to do that, yes, within the confines of keeping your client updated and within the confines of what we need to do. We can -- I will address it however you think is appropriate as quickly as I possibly can.

    MR. WAGNER: Very well, Your Honor.

    THE COURT: Now, Mr. Horma, can you please stand.

    So, Mr. Horma, let me be crystal-clear about what's going on here. I've just called the United States to task about a timing issue. And these things happen in the law all the time. And it's a Judge's job to make sure that things go forward as quickly as possible. So I'm doing my job here. And everybody here, in my experience, does their very, very best to make sure that things go forward in the way they should.

    And so I don't want you for a minute to think that this is negatively impacting your trial, your position, in any way other than the way that we're talking about. That it is we're going to have another round of

1  briefing, and quite possibly have the very same hearing
2  date if possible.  But it is in the interest of justice
3  that if there is this issue that's raised, that I have to
4  address it, and I will address it, and I will do it
5  fairly.  As fairly as I can.
6        I'm going to write everything out so you will
7  know exactly how I rule.  That's required, and I think
8  totally appropriate, right?  You should know what I'm
9  doing and why.  But I'm not going to do it without the
10 full information that I need because I don't think it
11 would be fair to anybody.  And I care very much that
12 however I rule is the very best I can possibly do.
13       You will always have a right to think about it,
14 and think what you want to do about it, based on how I
15 rule.  But I am sorry that here I'm addressing really
16 issues that are outside of your case also, but I don't
17 want you to think that we're doing anything behind your
18 back so I invited you in.  But I also -- because sometimes
19 you think what are they doing?  But this really has a lot
20 to do with other cases, and mostly about timing.
21       So I want you to address any questions that you
22 have with your attorneys, but I also want you to know that
23 we're going to go forward well and fairly with your
24 specific issues in mind independent of any timing issues.
25       Do you understand all that?

1     MR. HORMA:  Yeah, I understand.  Thank you.

2     THE COURT:  All right.  Okay.

3     So I appreciate everybody coming in, and I look forward to hearing from you in the near future.

4     

5     MS. MASTANDREA-MILLER:  Thank you.

6     THE COURT:  Thanks.

7     (The proceeding concluded at 11:42 a.m.)

8

9                    REPORTER'S CERTIFICATE

10    I, Krista Liscio Harding, OCR, RMR, Notary Public in and for the Commonwealth of
11    Virginia at large, and whose commission expires March 31, 2020, Notary Registration Number 149462,
12    do hereby certify that the pages contained herein accurately reflect the notes taken by me, to the
13    best of my ability, in the above-styled action.
      Given under my hand this 31st day of May, 2018.
14

                                  _____
15                                Krista Liscio Harding, RMR
                                  Official Court Reporter